**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ADAM GARBER, | : | CIVIL ACTION NO. |
| Gwinnett Cnty. ID # 99499879, | : | 1:15-CV-00123-AT-JCF |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SHERIFF BUTCH CONWAY, | : | PRISONER ACTION |
| COL. DON PINKARD, | : | 42 U.S.C. § 1983 |
| MAJOR D. HUGHES, | : | |
| GWINNETT CNTY. DET. CTR., | : | |
|     Defendants. | : | |

**MAGISTRATE JUDGE'S ORDER AND
NON-FINAL REPORT AND RECOMMENDATION**

Plaintiff, a pretrial detainee at the Gwinnett County Detention Center ("GCDC") in Lawrenceville, Georgia, signed and filed his original complaint, submitted as a habeas corpus petition, on January 10, 2015. (Doc. 1 at 4). The Court ordered this action to be converted into one brought under 42 U.S.C. § 1983, granted Plaintiff leave to proceed *in forma pauperis*, and ordered him to file an amended complaint. (Doc. 3). Plaintiff has filed an amended complaint (Doc. 4) and the following motions: to supplement his amended complaint (Docs. 7, 10, 12), for appointment of counsel (Doc. 5), for a preliminary injunction (Doc. 6), for an arrest warrant (Doc. 8), to convert this case into a class action (Doc. 11), for a change in the way his inmate grievances are

handled (Doc. 13), and for additional time in the law library (Doc. 14).  This matter is now ready for an initial screening.

## I.     The Legal Framework

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010).  Title 28 U.S.C. § 1915A requires a federal court to conduct an initial screening of a prisoner complaint seeking redress from a governmental entity, or from an officer or employee of such an entity, to determine whether the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief.  A complaint is frivolous when it "has little or no chance of success"—for example, when it appears "from the face of the complaint that the factual allegations are clearly baseless[,] the legal theories are indisputably meritless," or "the defendant's absolute immunity justifies dismissal before service of process."  *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (internal quotations omitted).  A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

2

(internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives." *Id.* at 678-79. To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

## II. Plaintiff's Causes Of Action

Plaintiff sues the GCDC[1] and the following Gwinnett County officers: (1) Sheriff R. L. Butch Conway; (2) Col. Don Pinkard; and (3) Major D. Hughes. (Doc. 4 at 1; *see id.* at 3). Plaintiff seeks to add Corporal Campbell as a fourth individual Defendant. (Doc. 7 at 2).

### 1. Restrictions On Access To World News

Plaintiff, who states that he has been housed at the GCDC as a pretrial detainee since December 2013, alleges that, pursuant to GCDC regulations, he is being denied

---

[1] Plaintiff, however, may not obtain relief from the GCDC in this action. *See, e.g., Smith v. Striblings*, 1:13-cv-3066-WSD, 2014 U.S. Dist. LEXIS 79750, at *9 (N.D. Ga. June 12, 2014) (finding no error in the conclusion that "Plaintiff failed to state a claim against the DeKalb County Jail because, in Georgia, a facility, such as a jail, generally is not considered a legal entity amenable to suit" (quoting *Brannon v. Thomas Cnty. Jail*, 280 Fed. Appx. 930, 934 n.1 (11th Cir. 2008), to the effect that a "County Jail is not an entity capable of being sued under Georgia law"); citing *Dean v. Barber*, 951 F.2d 1210, 1214-15 (11th Cir. 1992), to the effect that "certain subdivisions of local or county governments, such as sheriff's departments and police departments, generally are not legal entities subject to suit"). The GCDC should be dismissed from this action.

3

access to world news, both in print media and on television, and cannot receive "world news newspapers . . . in the mail from the publisher." (Doc. 4 at 3-4).

In its seminal ruling concerning "a prison regulation [that] impinges on inmates' constitutional rights," the Supreme Court of the United States stated that the "regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see id.* at 84 ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution. Hence, for example, prisoners retain the constitutional right to petition the government for the redress of grievances; they are protected against invidious racial discrimination by the Equal Protection Clause of the Fourteenth Amendment; and they enjoy the protections of due process." (citations omitted)); *see also Beard v. Banks*, 548 U.S. 521, 528 (2006) (citing *Turner* to the effect that "imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment").

The *Turner* Court noted four factors to guide the evaluation of a prison regulation: (1) whether "there [is] a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to

prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) "the existence of obvious, easy alternatives[, which] may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Turner*. 482 U.S. at 89-90 (internal quotations omitted); *see Perry v. Fla., Dep't of Corr.*, 664 F.3d 1359, 1364-65 (11th Cir. 2011) (citing the four *Turner* factors).

The *Turner* rubric also applies to pretrial detainees such as Plaintiff. "The fact of confinement as well as the legitimate goals and policies of the penal institution limits the[] retained constitutional rights" of incarcerated individuals, a "principle [that] applies equally to pretrial detainees and convicted prisoners. A detainee simply does not possess the full range of freedoms of an unincarcerated individual." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979); *see Newsome v. Lee County*, 431 F. Supp. 2d 1189, 1196 & n.4 (M.D. Ala. 2006) (citing *Wolfish* to the effect that "[t]he First Amendment rights of pretrial detainees are at least as extensive as the constitutional rights afforded convicted prisoners[,]" and concluding that "[b]ecause of this recognition, the Court will utilize cases involving both convicted prisoners and pretrial detainees in making its determination of whether a constitutional infringement occurred").

5

In *Beard*, the Supreme Court "consider[ed] whether a Pennsylvania prison policy that 'denies newspapers, magazines, and photographs' to a group of specially dangerous and recalcitrant inmates 'violate[s] the First Amendment.' " 548 U.S. at 524-25. The Court applied the four-part *Turner* test and determined that the Third Circuit had erred in overturning the grant of summary judgment to the Secretary of the Pennsylvania Department of Corrections. *Id.* at 528-33. But the Court also noted:

> [W]e do not suggest that the deference owed prison authorities makes it impossible for prisoners or others attacking a prison policy like the present one ever to succeed or to survive summary judgment. After all, the constitutional interest here is an important one. *Turner* requires prison authorities to show more than a formalistic logical connection between a regulation and a penological objective. A prisoner may be able to marshal substantial evidence that, given the importance of the interest, the Policy is not a reasonable one. *Cf.* 482 U.S. at 97-99 (striking down prison policy prohibiting prisoner marriages). And with or without the assistance that public interest law firms or clinics may provide, it is not inconceivable that a plaintiff's counsel, through rigorous questioning of officials by means of depositions, could demonstrate genuine issues of fact for trial. Finally, as in *Overton*, we agree that "the restriction is severe," and "if faced with evidence that [it were] a *de facto* permanent ban . . . we might reach a different conclusion in a challenge to a particular application of the regulation." *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003).

*Id.* at 535-36 (citations altered).

In light of the foregoing, Plaintiff has stated a plausible claim for relief, sufficient to survive frivolity review, that officials at the GCDC have violated his First

6

Amendment rights by denying him access to world news outlets, including newspapers.

## 2. Return Of Plaintiff's Incoming Mail To Sender Without His Being Given An Opportunity To Protest

Plaintiff also alleges that "on many occasions [he] has had publications returned with a notice only stating that something came, was denied, and returned with[out his being] given [an] opportunity to appeal the denial of a letter or publication and avenue to redress the issue. Often times, the notice will not say who sent the[ returned item] or [will] have a name but no sender's address." (Doc. 4 at 4).

The Supreme Court has "held that regulations affecting the sending of a publication . . . to a prisoner must be analyzed under the *Turner* reasonableness standard. Such regulations are valid if [they are] reasonably related to legitimate penological interests." *Owen v. Wille*, 117 F.3d 1235, 1237 (11th Cir. 1997) (internal quotations omitted).

> An inmate's First Amendment right to send and receive mail is a protected liberty interest under the Fourteenth Amendment's Due Process Clause. Thus, the decision to censor or withhold delivery of [inmate mail] must be accompanied by minimum procedural safeguards. At a minimum, an inmate is entitled to: (1) notice that mail addressed to him . . . has been rejected; (2) that the [sender] be given a reasonable opportunity to protest that decision, and (3) that complaints be referred to a prison official other than the person who originally disapproved the

7

correspondence.

*Osterback v. Crosby*, No. 4:01cv76-WS, 2003 U.S. Dist. LEXIS 13803, at *67-68 (N.D. Fla. Mar. 5, 2003) (citations and internal quotations omitted) (formatting altered); *see also Smith v. Mosley*, No. 2:03cv974-MEF (WO), 2006 U.S. Dist. LEXIS 11772, at *1, 11-12 (M.D. Ala. Feb. 15, 2006) (stating that "the withholding of incoming inmate mail must be accompanied by minimum procedural safeguards, including providing notice to the inmate that the mail has been rejected, affording the inmate a reasonable opportunity to protest the decision, and the opportunity to forward complaints regarding the rejection to prison officials"; and recommending summary judgment for the defendant warden and her administrative assistant because "Administrative Regulation Number 303 provides that a prison official must provide written notice of the temporary ban of mail," and "the regulation provides that an inmate may protest the ban by submitting notice of an appeal to the warden"), *adopted by* 2006 U.S. Dist. LEXIS 11766 (M.D. Ala. Mar. 7, 2006).

It appears that within this framework Plaintiff has set forth a plausible claim for relief, sufficient to survive frivolity review, with regard to the alleged GCDC policy or practice of returning incoming mail without first notifying either Plaintiff or the sender to allow either or both an opportunity to protest the decision. *See Prison Legal*

*News v. Chapman*, No. 3:12-CV-00125 (CAR), 2014 U.S. Dist. LEXIS 118579, at *22, 24 (M.D. Ga. Aug. 26, 2014) ("conclud[ing] that Defendants failed to provide a constitutionally adequate, minimum degree of due process to [plaintiff] when censoring its mailings," and noting that "[t]he Jail's censorship procedure is fundamentally flawed because it does not provide appropriate notice and appeal procedures for non-postcard mail").

### 3.     Incoming Mail Restricted To Post Cards Only

Plaintiff next alleges that the GCDC "has a post-card only policy for incoming mail which limits correspondence between inmates/detainees and free world persons." (Doc. 4 at 4).  Because courts differ on how to handle such allegations, Plaintiff has at least *stated* a claim for relief that is sufficiently plausible to survive frivolity review. *See Althouse v. Palm Beach County Sheriff's Office*, No. 12-80135-CIV-MARRA, 2013 U.S. Dist. LEXIS 18602, at *12-21 (S.D. Fla. Feb. 12, 2013) (applying four-part *Turner* test on summary judgment review and holding that the "postcard policy does not impede Plaintiff's First Amendment rights because it is content neutral, it logically advances the goals of institutional security and safety, and it is not an exaggerated response to those objectives"); *see also Chapman*, 2014 U.S. Dist. LEXIS 118579, at *17 ("conclud[ing] that the postcard-only policy does not violate [plaintiff's] rights

9

under the First Amendment"). As the *Althouse* court noted, however, courts have not uniformly denied challenges to post-card only policies as frivolous upon initial review:

> Applying the *Turner* factors, courts have upheld the constitutionality of similar postcard only policies in the face of First Amendment challenges. *See, e.g., Covell v. Arpaio*, 662 F. Supp. 2d 1146, 1155 (D. Ariz. 2009) (granting summary judgment in favor of defendant sheriff because the mail policy was "reasonably related to legitimate penological objectives"); *Gieck v. Arpaio*, No. CV 07-1143-PHX-NVW, 2008 U.S. Dist. LEXIS 48326, at *7 (D. Ariz. June 23, 2008) (rejecting plaintiff's facial challenge to defendant sheriff's mail policy and granting summary judgment in favor of defendant sheriff); *Gambuzza v. Parmenter*, No. 8:09-cv-1891-T-17TBM, 2010 U.S. Dist. LEXIS 60444, at *8 (M.D. Fla. May 28, 2010) (*sua sponte* dismissing a § 1983 case filed *in forma pauperis* on the ground that the complaint lacked an arguable basis in law because "[c]ourts have found that the post-card only mail policy is 'reasonably related to legitimate penological interests' ") (citations omitted); *Ditullio v. White*, No. 8:10-cv-294-T-26AEP, 2010 U.S. Dist. LEXIS 145561, at *1-2 (M.D. Fla. Jan. 28, 2010) (*sua sponte* denying plaintiff's motion to proceed *in forma pauperis* and dismissing his § 1983 claim because the defendants' postcard policy was "reasonably related to legitimate penological interests").

*Althouse*, 2013 U.S. Dist. LEXIS 18602, at *8 n.4 (citations altered or omitted). Accordingly, it would be premature to dismiss as frivolous Plaintiff's claim challenging the GCDC's post-card only policy for incoming mail.

### 4.   The Handling Of Plaintiff's Grievances

Plaintiff alleges that on January 24, 2015, Corporal Campbell ripped up two of his pre-grievances. (Doc. 7 at 2-3). But Plaintiff has no federal constitutional right to

10

a grievance procedure. *See Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) ("[A]s various circuits have held when ruling on an inmate's claim that he was denied use of a prison's grievance procedure, an inmate has no constitutionally-protected liberty interest in access to that procedure."); *see also Jernard v. Comm'r, Ga. Dep't of Corr.*, 457 Fed. Appx. 837, 840 (11th Cir. 2012) (citing *Bingham* and stating that the Eleventh Circuit "has specifically held that there is no constitutionally-protected liberty interest in access to a grievance procedure provided for voluntarily by a prison"). Plaintiff's allegations against Corporal Campbell, therefore, fail to state a plausible § 1983 claim for relief.

### 5. Sleep Deprivation

Plaintiff alleges that lights out at the GCDC occurs at 12 midnight, and "sometimes there is a standing count then. [He] then is woken up between 3:30 [and] 4 am for breakfast. . . . [and] again for standing count around 7:40 am." (Doc. 10 at 2). Plaintiff seeks a preliminary injunction requiring that the GCDC inmate population be given a minimum of "6 hours of undisturbed sleep, at night. And to change the meal pattern. Currently it is 3:30-4 am breakfast, 12:30 pm lunch, and 4:00-4:30 pm dinner." (*Id.*).

For there to be a violation of the Eighth Amendment constituting cruel and

11

unusual punishment, "[f]irst, there must be, objectively speaking, conduct by public officials sufficiently serious to constitute a cruel or unusual deprivation—one denying the minimal civilized measure of life's necessities. Second, there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000) (citations and internal quotations omitted). "Negligence does not suffice to satisfy this standard." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotations omitted); *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (noting that "[t]he Constitution . . . does not mandate comfortable prisons" (internal quotations omitted)).

In *Garrett v. Thaler*, 560 Fed. Appx. 375 (5th Cir. 2014), the plaintiff "challenge[d] the magistrate judge's dismissal of his sleep deprivation claim, arguing that the [prison was] subjecting him to cruel and unusual punishment by forcing him to choose between eating and sleeping." *Id.* at 378. "He contend[ed] that the only scheduled period for sleep [was] from 10:30 p.m. until 2:30 a.m. and that sleep deprivation has negative long-term health effects. He [sought] a change in the prison

12

schedule to allow for seven hours of uninterrupted sleep." *Id.* The Fifth Circuit concluded that the plaintiff had "alleged a nonfrivolous claim of an Eighth Amendment violation." *Id.* at 379-80 ("[T]he sleep deprivation [plaintiff] has alleged could plausibly constitute a denial of 'the minimal civilized measure of life's necessities' sufficient to satisfy the objective component of the Eighth Amendment inquiry. Our fellow courts have likewise found that inmates plausibly alleged cruel and unusual punishment in violation of the Eighth Amendment when prison conditions prevented adequate sleep." (citation and footnote omitted) (citing *Walker v. Schult*, 717 F.3d 119 (2d Cir. 2013), in which Second Circuit found that "sleep deprivation may deny prisoner of a minimal civilized measure of life's necessities")); *see also Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) (stating that "sleep undoubtedly counts as one of life's basic needs" and reversing district court's frivolity dismissal of § 1983 sleep deprivation claim). Likewise here, it appears that Plaintiff has at least *stated* a nonfrivolous Eighth Amendment claim alleging sleep deprivation at the GCDC.

### III. Conclusion

Plaintiff's three motions to supplement his amended complaint (Docs. 7, 10, 12) are **GRANTED**.

**IT IS RECOMMENDED** that the following claims be **ALLOWED TO**

13

**PROCEED**: Plaintiff's claims regarding the GCDC policy and/or practice restricting his access to world news media, the GCDC policy and/or practice of returning items received in the mail without prior notice to Plaintiff or the sender, the GCDC post-card only policy for incoming mail, and Plaintiff's claim alleging sleep deprivation.

**IT IS FURTHER RECOMMENDED** that Plaintiff's grievance procedure claim be **DISMISSED**; that Plaintiff's request to add Corporal Campbell as a Defendant be **DENIED**; that the Gwinnett County Detention Center be **DISMISSED**; and that Plaintiff's motion for an arrest warrant for Corporal Campbell (Doc. 8) and his motion regarding the handling of his inmate grievances (Doc. 13) be **DENIED** because, among other reasons, Plaintiff has no federal constitutional right to a grievance procedure.

Sheriff Conway is **ORDERED** to respond **within 21 days** to Plaintiff's motion for a preliminary injunction (Doc. 6) and to Plaintiff's supplemental request for a preliminary injunction regarding his sleep deprivation claim (*see* Doc. 10 at 2).

Plaintiff's motions for appointment of counsel (Doc. 5), and for additional time in the law library (Doc. 14) are **DENIED without prejudice** as premature.[2]

---

[2]To the extent that Plaintiff has filed separate motions asking that he be appointed as "assisted counsel," that a subpoena issue for video footage of Corporal Campbell ripping up his pre-grievances and that this matter be allowed to proceed as a class action (*see* Doc. 7-2 at 1-4), **IT IS**

14

The Clerk is **DIRECTED** to send a copy of this Order and Non-Final Report and Recommendation to both Plaintiff and Sheriff Conway, and to resubmit this matter to the undersigned upon receipt of Sheriff Conway's response to the motion for a preliminary injunction or at the expiration of the period noted above for the response.

**SO ORDERED and RECOMMENDED** this 19th day of March, 2015.

/s/ *J. CLAY FULLER*
J. CLAY FULLER
United States Magistrate Judge

---

**RECOMMENDED** that these motions also be **DENIED**. It is further **RECOMMENDED** that his separate motion to convert this matter into a class action (Doc. 11) be **DENIED**, as Plaintiff may not represent other inmates. *See Johnson v. Brown,* 581 Fed. Appx. 777, 781 (11th Cir. 2014) (affirming district court's denial of plaintiff's motion for class certification because "[a]s a *pro se* litigant, [a prisoner plaintiff] cannot bring an action on behalf of his fellow [] inmates.").